Argued at Pendleton November 3, affirmed December 27, 1921.

## STATE EX REL. RUDD v. RINGOLD.

(202 Pac. 734.)

**Nuisance—"Public Nuisance" Defined.**

1. A nuisance is public where it affects the rights enjoyed by citizens as a part of the public.

**Nuisance—"Private Nuisance" Defined.**

2. A "private nuisance" is anything done to the hurt, annoyance or detriment of the lands or hereditaments of another, not amounting to a trespass.

**Nuisance — Public Nuisance Private Nuisance as to Individual Specially Injured.**

3. The same act or structure may be a public nuisance, and also a private nuisance as to a person who is thereby caused a special injury other than that inflicted upon the general public.

**Municipal Corporations—Ordinances Establishing Fire Limits and Regulating Construction of Buildings Strictly Enforced.**

4. Ordinances establishing fire limits and regulating the construction of buildings therein should be strictly enforced in order to protect the lives and property of citizens.

102 Or.—26

Municipal Corporations—Ordinance Held to Place Duty of Remov-
ing Illegal Buildings in Fire Zone upon City Marshal, not on
Chief of the Fire Department.

5.  Under city ordinance making every tent or building con-
structed in fire limits in violation of the ordinance a nuisance, and
providing for the removal and tearing down of such buildings by
the city marshal, the duty of removing such buildings devolved
upon the city marshal, and not upon the chief of the fire depart-
ment of the city, notwithstanding other sections of the ordinance
clothing the chief of the fire department of the city with full au-
thority to enforce the ordinance.

Mandamus—Proper to Compel Officer to Perform Act Only Where
Duty is Prescribed by Law.

6.  The writ of *mandamus* may properly compel an officer to per-
form such act as the law specifically enjoins, but the writ will not
lie unless the duty sought to be enjoined is prescribed by the law
as devolving upon such officer.

From Umatilla: GILBERT W. PHELPS, Judge.

In Banc.

This is a *mandamus* proceeding instituted by plain-
tiff, a citizen, resident and voter of the City of Pen-
dleton, because of the erection of a wooden building
contrary to the ordinances of the City of Pendleton.
The relator, as sole plaintiff, originated the action.
The proceeding is brought to compel the defendant,
as fire chief of the City of Pendleton, to "enforce
Ordinances 405 and 1053; tear down and remove one
wooden building, which is eleven feet wide, forty
feet long, eight feet high, with a front sixteen feet
high, which is located on the east eleven feet of the
west half of Lot 1, Block 74, Reservation Addition to
the City of Pendleton."

Upon plaintiff's petition, an alternative writ of
*mandamus* was issued, to which the defendant inter-
posed a demurrer for the reasons among others that
the plaintiff has no legal capacity to maintain the
writ, and insufficiency of facts stated in the writ.

The court sustained the demurrer to the writ and dismissed the action.  Plaintiff appeals.

                                        AFFIRMED.

For appellant there was a brief and oral argument by *Mr. Charles H. Rudd.*

For respondent there was a brief over the names of *Mr. H. J. Warner* and *Messrs. Peterson, Bishop & Clarke,* with oral arguments by *Mr. Warner* and *Mr. Clarke.*

BEAN, J.—Plaintiff assigns as error the sustaining of the demurrer.

While the location of the building is given in the writ, it is not directly alleged that it is located within the fire limits of the City of Pendleton.  The plaintiff does not show that he owns buildings in close proximity to the one in question, so that he would sustain or be likely to sustain some injury differing from that sustained by the general public.  The record does not show that this proceeding is authorized or prosecuted by the district attorney or any officer on behalf of the state or municipality.

Section 8 of Ordinance No. 405 of the City of Pendleton provides:

"Every tent or building or addition to a building or tent erected within or moved within said fire limits contrary to the provisions of this ordinance, is hereby declared and ordained to be a nuisance and liable to be abated as such unless the same be removed within five days after notice so to do, given by the city marshal to the person occupying the same or the person owning the same or causing the same to be erected or repaired or removed within such limits, that officer together with such person or persons as he may summon to his assistance or as the Common

Council may direct to assist him, shall immediately proceed to tear down and remove such building or tent or addition thereto, and the costs and expenses of so doing and of the removal thereof shall be charged against and collected from the owner of the land upon which the same shall be so unlawfully erected, moved or repaired, if the same shall have been so erected, moved or repaired with his consent, or from both such owner and such occupant, and proper proceedings for the purpose of collecting such costs and ' expenses may be instituted in the proper courts in the State of Oregon.''

Section 10, of Ordinance No. 405, reads as follows:

''The Common Council may, in its discretion, upon application made, grant a permit to any person for the erection of a wooden building within said fire limits for water closet or wood shed, or a permit for the erection of a building as described in Section 9 of this ordinance, of larger dimensions than therein specified.''

It is noted that the writ does not show that the building in question was such a one as might be erected by permission of the common council, nor that the same was not so permitted.

Section 11 reads thus:

''The Chief of the Fire Department of the City of Pendleton, under the authority conferred upon him by the ordinances of the said city, as fire warden of the said city, is hereby clothed and vested with full authority to enforce this ordinance.''

The fire limits of the city, as they now exist, are prescribed by Ordinance No. 1053.

1–3. A nuisance is public where it affects the rights enjoyed by citizens as part of the public, that is, the rights to which every citizen is entitled. A private nuisance is anything done to the hurt, annoyance or detriment of the lands or hereditaments of another,

and not amounting to a trespass. The difference between public and private nuisances does not depend upon the nature of the thing done, but upon the question whether it effects the general public or merely some private individual. Therefore the same act or structure may be a public nuisance and also a private nuisance as to a person who is thereby caused a special injury other than that inflicted upon the general public: 29 Cyc. 1152 B.

In *Van Buskirk* v. *Bond,* 52 Or. 234, at page 237 (96 Pac. 1003, 1104), this court speaking by Mr. Justice MOORE said:

"The right to restrain a public nuisance by a private party is not recognized, unless he has sustained some damage or injury differing in kind from that suffered by the general public. (*Parrish* v. *Stephens,* 1 Or. 73; *Esson* v. *Wattier,* 25 Or. 7, 34 Pac. 756; *Blagen* v. *Smith,* 34 Or. 394, 56 Pac. 292, 44 L. R. A. 522)."

The writ of *mandamus* "may be issued to any inferior court, corporation, board, officer, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station." Section 613, Or. L.

The right of the plaintiff to maintain the proceeding depends upon the facts in the case. We have merely referred to some matters in a general way, as it may be they could have been corrected by amendment. As we view it, the vital question in the case is, assuming that a wooden building was erected within the fire limits of the City of Pendleton in violation of the ordinance, upon whom does the duty devolve to abate the same?

4. It may not be out of place to say that the ordinances establishing fire limits and regulating the con-

struction of buildings therein should be strictly en-
forced in order to protect the lives and property of
citizens. It appears that the chief of the fire depart-
ment of the city is, by Section 11 of the ordinance,
given general supervision over the erection of buildings
within the fire limits of the city. Where, however, a
building has been erected within the fire limits in
violation of the ordinance, Section 8 specifically en-
joins the duty of giving five days' notice to the occu-
pant or owner to remove the same, and further en-
joins upon that officer, together with such person or
persons as he may summon, or as the common council
may direct to assist him, to proceed immediately to
tear down and remove such building.

We do not think that the specific provisions relat-
ing to the duties of the city marshal contained in Sec-
tion 8 of the ordinance are in any way changed or
affected by the general provision relating to the chief
of the fire department in Section 11.

5. It is appropriately and plainly ordained that
the duty attempted to be enforced upon the chief of
the fire department in this proceeding devolves upon
the city marshal. Therefore, treating the conclusions
in the alternative writ, that the building was erected
in violation of the city ordinance, as allegations of
fact and assuming them to be such, it is clear that the
proceeding cannot be maintained against the fire
chief. There is no provision of any ordinance which
requires that official to tear down any building wrong-
fully constructed.

6. The writ of *mandamus* may properly compel an
officer to perform such act as the law specifically en-
joins, but the writ will not lie unless the duty sought
to be enjoined is prescribed by the law as devolving
upon such officer: *Ball* v. *Lappius,* 3 Or. 56; *Mackin*

v. *Portland Gas. Co.,* 38 Or. 120 (61 Pac. 134, 62 Pac. 20, 49 L. R. A. 596); *McGee* v. *Beckley,* 54 Or. 250 (102 Pac. 303, 103 Pac. 61); *State ex rel.* v. *Kay,* 74 Or. 258, 278 (145 Pac. 277).

The demurrer to the writ was therefore properly sustained, and the judgment of the trial court is affirmed.                                    AFFIRMED.